# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3399

_____

United States of America,         *
                                     *
         Plaintiff-Appellee,        *
                                       *   Appeal from the United States
      v.                             *   District Court for the Western
                                       *   District of Missouri.
Alexei Pena                         *
                                       *
         Defendant-Appellant.    *

_____

Submitted: **March 14, 2003**
Filed: August 11, 2003

_____

Before **BOWMAN, RILEY, and MELLOY, Circuit Judges.**

_____

MELLOY, Circuit Judge.

Defendant-Appellant Alexei Pena appeals the sentence imposed by the district court[1] on the grounds that: (1) the district court improperly considered his nationality in determining his sentence, (2) the district court improperly applied an obstruction of justice enhancement, and (3) the defendant's conviction violated double jeopardy. We affirm the defendant's conviction and the sentence imposed by the district court.

_____

[1]The Honorable Nanette K. Laughery, United States District Judge for the Western District of Missouri.

## I.

Pena is a Cuban national who was given asylum in the United States. On June 26, 2001, Pena was charged with conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Pena's first trial in December of 2001 resulted in a hung jury. At Pena's second trial, an undercover detective and other surveillance officers testified that Pena had engaged in face-to-face drug transactions in a McDonald's parking lot. Pena denied ever having been to this McDonald's. The jury in the second trial found Pena guilty on four of the indictment's five counts.

On August 22, 2002, the district court sentenced Pena to a forty-one month term of imprisonment, which was the maximum sentence allowed by the applicable federal sentencing range of thirty-three to forty-one months. Pena's base offense level was enhanced due to obstruction of justice under U.S.S.G. § 3C1.1. At the sentencing hearing the district court stated:

> I have sentenced you to the high end of the guideline. I have done so in part because you have failed, continually failed to show any remorse for your drug dealing and to accept any responsibility for your drug dealing, and, instead, you have impugned the integrity of Detective Florido, who I believed.

> And as I indicated previously, I am convinced that you have lied both in your first trial and in your second trial. You've been given an opportunity to come to the United States and become a productive citizen, but, in fact, you have repaid this courtesy by becoming a drug dealer.

## II.

Although Pena's sentence was the maximum allowed under the federal Sentencing Guidelines, Pena does not contend that the sentence exceeded the Guidelines. "A sentence imposed within the applicable guidelines range is reviewable only if it is imposed in violation of the law or as a result of an incorrect application of the guidelines." United States v. Onwuemene, 933 F.2d 650, 651 (8th Cir. 1991). Pena asserts that his sentence was improper because at sentencing the district court mentioned Pena had "been given an opportunity to come to the United States." Pena contends that this statement indicates that the court considered his national origin in determining his sentence. U.S.S.G. § 5H1.10 prohibits such a consideration. To find that the sentence imposed was a violation of law we would have to determine (1) that the statement is a reference to national origin, and (2) that the statement demonstrates that national origin was considered in determining Pena's sentence. The record does not support such a determination. The district court's statement is a reference to Pena's being given asylum in the United States. There is no mention that Pena came from Cuba. Thus the statement is not necessarily a reference to "national origin." Even if the statement is deemed a reference to national origin, however, there is insufficient evidence to show that national origin was a factor in the sentence imposed on Pena.

Pena directs this court to Onwuemene, in which a statement of the district court regarding national origin resulted in remand. In Onwuemene, the district court judge stated: "The other thing *that I feel that warrants imposition at the high end of the guideline range*: You are not a citizen of this country. This country was good enough to let you come in here . . . and you repay that kindness by committing a crime like this." Onwuemene, 933 F.2d at 651 (emphasis supplied). This statement, unlike the statement at issue in the instant case, expressly indicated that nationality was a factor in sentencing.

The Second Circuit has stated that, "[r]eference to national origin and naturalized status is permissible, so long as it does not become the basis for determining the sentence." United States v. Jacobson, 15 F.3d 19, 23 (2d Cir. 1994) (citation omitted). In Jacobson, the district court noted at sentencing that the defendant was given the opportunity to come to the United States from what was then the Iron Curtain. Id. at 20. Because the court offered independent reasons for the sentence imposed–the defendant's intelligence and lack of remorse–the conviction was upheld. Id. at 23. In Pena's case, the district court explicitly stated three factors which warranted imposing the maximum sentence. The district court stated that Pena: (1) failed to show remorse for drug dealing; (2) failed to accept responsibility for drug dealing; and (3) impugned the integrity of a detective. In outlining these factors, the court made no reference to national origin. The statement regarding Pena's political asylum was, unlike the statement in Onwuemene, not made as part of an explanation for the sentence imposed. Rather, it was an observation about testimony that Pena had introduced regarding his struggle to come to the United States. We do not find that the district court's statement regarding political asylum was the basis for determining Pena's sentence.

III.

We review the imposition of a sentence enhancement for clear error. United States v. Berndt, 86 F.3d 803, 810 (8th Cir. 1996). Pena received a sentence enhancement for obstruction of justice based on the recommendation of the Presentence Investigation Report (PSR). "If a defendant objects to an obstruction enhancement based on perjury, the district court 'must review the evidence and make independent findings' that the defendant willfully gave false testimony concerning a material matter in the case." United States v. Esparza, 291 F.3d 1052, 1055 (8th Cir. 2002) (quoting United States v. Dunnigan, 507 U.S. 87, 95 (1993)). In response to Pena's objection, the district court noted its belief that Pena lied in both of his trials. This statement was based on the district court's own observations, rather than

just the jury's verdict. Furthermore, although the district court did not state the specific elements that constituted perjury:

> [W]e have affirmed obstruction enhancements when the evidence of willfulness was unequivocal, without an express finding of willfulness by the district court. See United States v. Simms, 285 F.3d 1098, 1101 (8th Cir. 2002); United States v. Robinson, 217 F.3d 560, 565-66 (8th Cir. 2000). In these cases, the district court made a general finding of perjury without making a specific finding of willfulness. Simms, 285 F.3d at 1101 (district court found the defendant "had committed perjury on 'some pretty critical issues' "); Robinson, 217 F.3d at 565 (district court found the defendant's testimony "was not truthful regarding material facts"). Although there was no explicit finding as to willfulness, we affirmed because the record left no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory. See Simms, 285 F.3d at 1101; Robinson, 217 F.3d at 565-66.

Esparza 291 F.3d at 1055.

The nature of Pena's testimony is unequivocal. At trial, Detective Florido testified that Pena sold him drugs multiple times at a particular McDonald's. In response to cross-examination questions about Florido's testimony, Pena denied having ever sold drugs. He also stated under oath: "I was never there. Not with [the co-defendant], not even by myself because I don't think I have ever gone to that McDonald's." This testimony is directly contradictory to the testimony of Detective Florido. Because the district court said, in sentencing, that it believed the testimony of Detective Florido, the nature of Pena's perjury is sufficiently clear to affirm the sentence enhancement.

Pena also argues that because his obstruction of justice resulted in a sentence

-5-

enhancement, it is "double counting" to use that same factor when determining the specific sentence to be imposed within the Guideline range. "Double counting occurs when 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir. 1997) (quoting United States v. Alexander, 48 F.3d 1477, 1492 (9th Cir. 1995)). Considering the same factor in multiple stages of the sentencing process is not necessarily double counting, however. See Koon v. United States, 518 U.S. 81, 96 (1996) ("If the special factor is . . . already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present."); United States v. Thin Elk, 321 F.3d 704, 709 (8th Cir. 2003) (holding that based on the circumstances of the case it was not double counting to consider psychological injury to the victim in increasing the base level of an offense and in granting an upward departure from the Guidelines.). It stands to reason that because a factor can, on occasion, be considered for a second time in imposing an upward departure, a factor can also sometimes be considered for a second time in imposing a sentence *within* the Guideline range. Here, Pena's perjury did not consist of a simple denial of the charges. The district court found that Pena lied at two trials and his sentencing hearings, and that his lies impugned the integrity of a detective.

Additionally, although double counting of Pena's perjury may be justified, it is not clear that such double counting occurred. At sentencing, the district court stated, "I am convinced that you have lied both in your first trial and in your second trial," but also offered three additional reasons for imposing the maximum sentence. See United States v. Sykes, 46 F.3d 869, 871 (8th Cir. 1995) (holding that a consideration of the amount of money involved in a fraud case was not double counting when the district court also referred to the deterrent effect of the sentence); United States v. Harris, 997 F.2d 1235 (8th Cir. 1993) (finding "no simple duplication

of reasons already used" when the district court delved into the specific nature of the defendant's prior conviction). These reasons were not fully accounted for by another part of the Sentencing Guidelines. Finding no clear error, we affirm the sentence enhancement.

IV.

Lastly, we address Pena's contention that his conviction at a second trial violates the Double Jeopardy Provision of the Constitution. "If a mistrial is declared over the objections of a criminal defendant, double jeopardy will prevent a second trial unless the mistrial was a manifest necessity." United State v. Ford, 17 F.3d 1100, 1102 (8th Cir. 1994). Although the record is unclear as to whether Pena actually objected to the declaration of a mistrial, we find, assuming arguendo that an objection was made, no error in the district court's declaration.

Pena cites this court's opinion in Huss v. Graves, 252 F.3d 952 (8th Cir. 2001), which held that "[t]he prohibition of a retrial prevents the government from 'gain[ing] an advantage from what it learns at the first trial about the strength of the defense case and the weaknesses of its own.'" Id. at 957 (quoting United States v. DiFrancesco, 449 U.S. 117, 128 (1980)) (second alteration in original). This "advantage" was not the reason for Huss' conviction being reversed and remanded, however. Huss' first trial was to a judge who refused to enter a verdict. In Huss, we specifically noted that the case was "not similar to those in which a mistrial is declared when a jury is unable to reach a verdict, *a situation in which a finding of manifest necessity is almost always justified*." Id. at 956-57 (emphasis added). Because Pena's mistrial resulted from a hung jury, and because there are no additional extenuating circumstances, the second trial of Pena did not constitute double jeopardy.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT