# United States Court of Appeals
## For the First Circuit

No. 22-1654

UNITED STATES OF AMERICA,

Appellee,

v.

MIGUEL SANTANA-AVILÉS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Kayatta, Selya, and Rikelman,
Circuit Judges.

Richard B. Klibaner and Klibaner & Sabino on brief for appellant.

W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, on brief for appellee.

October 22, 2024

**SELYA**, **Circuit Judge**. In this appeal, defendant-appellant Miguel Santana-Avilés seeks to set aside his conviction and sentence for assault of a correctional officer. See 18 U.S.C. § 111(a)(1), (b). That conviction, he insists, is fatally flawed because it resulted from erroneous evidentiary rulings. Concluding, as we do, that the appellant's reach exceeds his grasp, we affirm his conviction and sentence.

## I

We briefly rehearse the relevant facts and travel of the case. "Because these appeals do not present challenges to the sufficiency of the evidence but, rather, deal with other claims of error, we rehearse 'the facts in a balanced manner in which we objectively view the evidence of record.'" United States v. Rodriguez, 115 F.4th 24, 33 (1st Cir. 2024) (quoting United States v. Amador-Huggins, 799 F.3d 124, 127 (1st Cir. 2015)).

### A

Witnesses for the prosecution testified as to the following facts. Correctional Officer Efrén Rosario was working in the Metropolitan Detention Center in Guaynabo, Puerto Rico (MDC Guaynabo). On August 20, 2020, he conducted an inmate count with the assistance of officer-in-training Marianés Santana. This count required the officers to confirm that each inmate was in his assigned cell and then lock the cell door.

When Officers Rosario and Santana arrived at the cell shared by the appellant, Héctor Maldonado-Maldonado (Maldonado), and a third roommate, only the appellant was present. Officer Rosario searched the cell and found an extra pillow on Maldonado's bed, which violated prison policy. As Officer Rosario was removing the extra pillow, Maldonado rushed into the cell. He complained that "you're always putting your foot in the way of the inmate, [expletive deleted]."

Anger morphed into violence when Maldonado punched Officer Rosario in the face. The appellant then grabbed Officer Rosario from behind, allowing Maldonado to continue beating him. Stirring the pot further, the appellant encouraged the assault by twice saying "Hit him."

As the scuffle continued, Officers Rosario and Santana were able to press their emergency buttons, summoning reinforcements to the scene. Officer David Figueroa was one of two officers to arrive first. He pepper-sprayed both the appellant and Maldonado and then restrained the appellant against a wall. Officer Figueroa later testified that the appellant — after being pepper-sprayed — stated in a "normal tone": "I didn't do nothing" and "It wasn't me."

In due course, other officers arrived. Both the appellant and Maldonado were restrained and taken to the prison's infirmary.

Once the dust had settled, the authorities charged both the appellant and Maldonado with assaulting, resisting, or impeding prison officers. See 18 U.S.C. § 111(a)(1), (b). A federal grand jury eventually indicted both men on this charge. Maldonado entered into a plea agreement, while the appellant maintained his innocence and proceeded to trial.

At trial, two evidentiary disputes arose that are relevant here. To begin, the appellant did not testify but sought to introduce his statements that "I didn't do nothing" and "[i]t wasn't me." The government sought to exclude these statements as inadmissible hearsay, see Fed. R. Evid. 802, while the appellant sought to justify their introduction as excited utterances, see id. 803(2). The district court sustained the government's objection and refused to admit the statements.

The second evidentiary dispute concerned an email explaining the lack of video evidence. Although there was a video camera positioned to show the interior of the appellant's cell, no video of the assault was recorded. To explain this gap, a prison technician from MDC Guaynabo, Norman Rivera, testified that MDC Guaynabo had updated its security camera recording system in the summer of 2020. Rivera had prepared a report about this update in 2021. This update led to a year's worth of problems with the video system, including "crashes" due to incompatibilities between the

cameras and the computer system used to store security footage. Cameras outside the unit in question, however, were working that day, and video was recorded from those cameras.

Following the appellant's cross-examination of Rivera, the government sought to introduce an email from Rivera summarizing the relevant problems with the video system from October of 2020. It argued that the cross-examination suggested either fabrication or recent improper motive. See Fed. R. Evid. 801(d)(1)(B)(i). Over the appellant's objection, the district court admitted the email into evidence.

The government presented five witnesses before it rested. The defense presented none. The jury found the appellant guilty of "aiding and abetting, knowingly . . . forcibly assault[ing], imped[ing], intimidat[ing], or interfer[ing] with an officer of the United States while engaged in or on account of the performance of official duties." The court sentenced the appellant to an eighty-seven-month term of immurement. This timely appeal followed.

## II

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction over the original prosecution pursuant to 18 U.S.C. § 3231.

When objections to the district court's evidentiary rulings are preserved for appeal, those objections are ordinarily

- 5 -

reviewed for abuse of discretion. See United States v. Hatch, 514 F.3d 145, 153 (1st Cir. 2008). We will not find an abuse of discretion unless "a relevant factor deserving of significant weight is overlooked," "an improper factor is accorded significant weight," or there is "a palpable error of judgment in calibrating the decisional scales." United States v. Nguyen, 542 F.3d 275, 281 (1st Cir. 2008) (quoting United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)). "Abuse of discretion is not a monolithic standard of review." United States v. Soto-Villar, 40 F.4th 27, 33 (1st Cir. 2022). "Under this rubric, 'we afford de novo review to the [district] court's interpretation and application of [law], assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion.'" Id. (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015)).

Not every error in the admission or rejection of proffered evidence demands a new trial. As long as "it is highly probable that the error did not contribute to the verdict," the verdict will not be overturned. United States v. Abbas, 100 F.4th 267, 290 (1st Cir. 2024) (quoting United States v. Galíndez, 999 F.3d 60, 64 (1st Cir. 2021)).

**III**

The appellant first challenges the ruling excluding his statements that "I didn't do nothing" and "[i]t wasn't me." This ruling, he says, constituted an abuse of discretion. In his view,

- 6 -

these statements fall under an exception to the hearsay rule for excited utterances. See Fed. R. Evid. 803(2). As explained below, we find no reversible error.

To qualify as an excited utterance, a statement must satisfy two requirements: first, it must relate to a startling event; and second, it must be made when the declarant is still under stress from the startling event. See id.

In the case at hand, the district court found that the proffered statements did not comprise excited utterances because they did "not relate directly to the startling event." This finding was based on the premise that the statements were not specific to either the beating or "the incident of the contraband." We deem this assessment problematic. Although — as the district court noted — the statements did not describe the specific incident, that is not a requirement for an excited utterance. See Bemis v. Edwards, 45 F.3d 1369, 1372 n.1 (9th Cir. 1995) (explaining that even though "the subject matter of an excited utterance is frequently a description of the 'startling event,' the statement need only 'relat[e] to' the startling event." (alteration in original) (quoting Fed. R. Evid. 803(2))). As the appellant points out, it seems unlikely that — moments after being pepper-sprayed and while being pinned to a wall — a prisoner would be thinking at all about his cellmate's contraband pillow. Here, moreover, there are no facts in the record suggesting that the

- 7 -

pillow was a continuing focal point of the incident. Fairly viewed, then, the circumstances indicate that the statements were about the physical altercation. We thus regard the district court's conclusion concerning the first excited utterance criterion as dubious.

Of course, the district court also concluded that the appellant was not under the stress of the startling event. The court identified two factors in support of this conclusion. First, it relied on the officers' testimony to find that the appellant had a "calm" demeanor and was not agitated. In our view, this finding rests on shaky ground: after all, the appellant had just been pepper-sprayed and was being pinned to a wall. What is more, the scene was swarming with guards: Officer Figueroa's uncontradicted testimony reflects that many officers arrived at the cell within seconds of his own arrival. Although the district court was entitled to credit Officer Figueroa's testimony about the appellant's demeanor, see Deguio v. United States, 920 F.2d 103, 106 (1st Cir. 1990), the objective evidence of the stressful situation might well have overwhelmed the officer's subjective assessment of the appellant's demeanor, see United States v. Nieves-Díaz, 99 F.4th 1, 7 n.2 (1st Cir. 2024) ("[A factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

- 8 -

committed." (quoting In re The Bible Speaks, 869 F.2d 628, 630 (1st Cir. 1989) (alteration in original))).

Second, the district court held that the appellant had time to reflect before making the statements as evinced by the statements' self-serving nature. Therefore — the district court reasoned — the appellant was not under the stress of the event. We agree that the self-serving nature of the statement is highly relevant to the question of its admissibility. See text infra. But we hesitate to agree that this fact indicates that the appellant was not under the stress of the event.

Importantly, all of the relevant events occurred within a matter of minutes — and the appellant made the statements while still restrained against a wall by Officer Figueroa. This is well within the customary parameters for what courts consider to be excited utterances. See United States v. Taveras, 380 F.3d 532, 537 (1st Cir. 2004) ("The time lapse in most excited utterance cases is usually a few seconds . . . or a few minutes.").

The government rejoins that "[w]here incriminating evidence is discovered in one's possession, it requires only the briefest reflection to conclude that a denial and plea of ignorance is the best strategy." United States v. Sewell, 90 F.3d 326, 327 (8th Cir. 1996). The district court agreed that the self-serving nature of the statements indicated time to reflect because the declarant would understand the "legal ramifications" of his

statement. United States v. Brito, 427 F.3d 53, 61-62 (1st Cir. 2005). But the portions of Brito relied upon by the district court were related to Brito's Confrontation Clause issue. See id. They are not dispositive as to whether a statement should be admitted as an excited utterance under the rules of evidence. See id. at 61. For these reasons, we conclude that here, too, the district court's analysis was less than compelling.

Notwithstanding these doubts, abuse of discretion is a high bar, and we are not sure that the exclusion of the statements reaches it. Here, however, we need not decide whether an abuse of discretion occurred.

Even if the district court's ruling crossed the line into abuse — a question that we need not resolve — any such error was harmless. Put another way, any such error "did not substantially sway the jury's verdict" and, therefore, it does not undermine the verdict. United States v. Soler-Montalvo, 44 F.4th 1, 19 (1st Cir. 2022) (quoting United States v. Rivera-Carrasquillo, 933 F.3d 33, 46 (1st Cir. 2019)). After all, there is ample evidence in the record to support the appellant's conviction: the record shows that the statements were in direct contradiction to the testimony of several officers. And the statements' conclusory and self-serving nature — although not necessarily vitiating admissibility — suggests that the statements

would have been of such little probative weight that their admission would have had no effect on the outcome of the trial.

**IV**

This brings us to Rivera's October 2020 email regarding the problems with the prison's video system. The appellant contends that this email was improperly admitted under hearsay principles.

Some background is useful. The government sought the admission of the email under Rule 801(d)(1)(B) of the Federal Rules of Evidence, which provides that a statement is not hearsay if it "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."[1] The district court allowed the email to be introduced over the appellant's objection.

---

[1] The district court admitted the email under both Rule 801(d)(1)(B)(i) and (ii). The government's argument at trial and the district court's oral ruling regarding admission combine to make clear that the appellant's credibility attack drew its essence from a charge of fabrication or improper motive. There was no discussion of a collateral attack or inconsistency that might engage the gears of Rule 801(d)(1)(B)(ii). See United States v. Portillo, 969 F.3d 144, 175 (5th Cir. 2020). Our analysis, therefore, focuses on Rule 801(d)(1)(B)(i).

- 11 -

We hold that the admission of the email was not an abuse of discretion. In conducting the Rule 801(d)(1)(B)(i) inquiry, "we consider whether there is 'some degree of fit between the alleged fabrication and the prior statement.'" Lech v. von Goeler, 92 F.4th 56, 68 (1st Cir. 2024) (quoting United States v. Chiu, 36 F.4th 294, 301 (1st Cir. 2022)). "[A] charge of recent fabrication does not have to be 'expressly made,'" but there must be "'specific questions' during the opposing party's examination 'that suggest recent fabrication or bias.'" Id. (quoting United States v. Lozada-Rivera, 177 F.3d 98, 104 (1st Cir. 1999)). The general rule is "that a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive [is] admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it [is] inadmissible if made afterwards." Tome v. United States, 513 U.S. 150, 156 (1995).

In laying the foundation for the admission of this evidence, the government suggests that the appellant indicated through argument and cross-examination that the absence of the video evidence was the result of some improper conduct or that its absence was suspicious. The record bears out the government's suggestion.

The cross-examination of Rivera (especially when viewed in light of the record as a whole) was designed to invite the jury

to believe that some nefarious conduct was hiding behind a technical error.  For example, the cross-examination highlighted the absence of any complaint about the computers that day.  In addition, defense counsel asked Rivera, "[W]hen you prepared your report, do you remember writing in the report that . . . the cameras in unit 1-B were compatible with the system being used at that time with the cameras?"  Defense counsel claimed that this question referred to compatibility at the time of the report in 2021.  But the district court rejected this interpretation of the evidence, noting that the phrasing and context of the question gave the impression that it referred to the time of the crime.  That would, of course, contradict the witness's other testimony.

The appellant responds that the cross-examination was insufficient to "open the door" to the admission of the email. Lozada-Rivera, 177 F.3d at 103.  In support, he cites our decision in Lozada-Rivera.  But this case is at a far remove from Lozada-Rivera, in which the court observed that the cross-examination was both "remarkable . . . for its brevity" and "meandering"; that the alleged improper motive was suggested only through "weak innuendo"; and that the admitted document was "highly prejudicial."  Id. at 103-04.

Here — as the district court supportably found — the appellant commingled technological concepts and chronological events in an attempt to give the impression that the witness had

- 13 -

fabricated his testimony. What is more, this was a central theory of the defense. The appellant's brief describes the absence of the video, "which would have allowed the jury an objective view of what had occurred," as one of the three main pillars of the defense.

In all events, the email only served to confirm the reason for the missing video. It did not change the fact of its absence. It follows inexorably that the admission of the email could only be prejudicial to the appellant if he is suggesting fabrication or an improper motive for the testimony regarding the video's absence. Thus, it was well within the district court's broad discretion to admit the email to rebut these implicit charges.

In a footnote to his brief, the appellant suggests that the email does not satisfy the requirement that the prior statement predate any motivation to lie. See Tome, 513 U.S. at 167. This suggestion rests on a porous foundation: the appellant says that the email was sent in October of 2022 (after Rivera's declaration for the proceedings below was signed in December of 2021). But the email was in fact written in October of 2020 — well before the declaration was signed. Consequently, this argument collapses of its own weight.

To sum up, we hold that it was not an abuse of discretion for the district court to admit the challenged email under Rule 801(d)(1)(B)(i). The court reasonably found that the appellant was attempting to imply fabrication and recent improper motive.

Accordingly, the email was properly admitted to rebut this implication.

V

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**<u>Affirmed</u>**.